# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MICHAEL A. FARMER,            )
                              )
            Plaintiff,        )
                              )
v.                            )   Case No. CIV-06-552-KEW
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## OPINION AND ORDER

Plaintiff Michael A. Farmer (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 17, 1961 and was 45 years old at the time of the ALJ's decision. He completed his education through the tenth grade. Claimant previously worked as a welder, carpenter's helper, and waste water maintenance worker. Claimant alleges an inability to work beginning December 25, 2000 due to lumbosacral radiculopathy, sciatica, chronic back pain, hypertension, cardiomyopathy, chest pain, and tendonitis of the elbow and shoulder.

**Procedural History**

On February 25, 2004, Claimant protectively filed for disability benefits under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On October 13, 2005, Claimant appeared at a hearing before ALJ Lantz McClain in Hugo, Oklahoma. By decision dated May 11, 2006, the ALJ found Claimant was not disabled at any time through the date of the decision. On October 26, 2006, the Appeals Council denied Claimant's request for review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform the sedentary jobs in the national and regional economies of production assembler, optical goods person, and ticket counter clerk.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to conduct a proper step three analysis as it relates to 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A); and (2) engaging

4

in a credibility analysis of Claimant's testimony which is not supported by law or by substantial evidence.

**Step Three Analysis**

Claimant contends the ALJ failed to engage in a proper step three analysis. Specifically, Claimant contends the ALJ should have found he met Listing 1.04A concerning a back impairment since all of the required elements were contained in the medical record for such a finding. Further, Claimant contends the ALJ should have ordered that a consultative x-ray or EMG testing in order to ascertain whether Claimant's back condition met the referenced listing.

On April 4, 1990, Claimant first received treatment for a back condition – a date well before his alleged onset date of December 25, 2000. The record is sparse but indicates some complaint regarding Claimant's lumbar region. It appears from this record that the recommended treatment for the condition was hot packs, ultrasound, and exercise. (Tr. 210-211).

On September 14, 1994, Claimant was attended by Dr. Bharathy Sundaram. Upon examination, Dr. Sundaram found Claimant's condition was largely normal. However, he found Claimant experienced diminished sensation to pin prick in the sole of the left foot and also extending to the back of the calf region and stopping short mid way between the popliteal fossa and the Achilles

5

tendon. Claimant had a normal gait and coordination. His range of movement with forward flexion of 90 to 100 degrees, backward extension of about 20 degrees, limited right lateral flexion but otherwise unremarkable left lateral flexion, limited right and lateral rotation. Straight leg raising revealed profound tenderness in the back of the thigh and calf at 50 and 60 degrees on the left side. Dr. Sundaram's impression was "[p]robable S1 radiculopathy. Probable etiology either lateral foraminal stenosis or disc herniation." (Tr. 213).

On May 11, 2003, Claimant presented to the emergency room where he was attended by Dr. Vivek Kheptal. Claimant reported he was experiencing a sharp, pressure pain in his left chest radiating to his left shoulder with shortness of breath and sweating. (Tr. 171). Claimant's ECG showed normal sinus rhythm. (Tr. 173). His lab work the next day was normal. (Tr. 145-155). He was determined to have unstable angina and stress anxiety and was prescribed medication. (Tr. 156).

On May 15, 2003, Claimant underwent a cardiac study which revealed preserved but low normal left ventricular systolic function of approximately 50 percent with mild concentric left ventricular hypertrophy. This result was determined to probably be consistent with hypertensive cardiomyopathy, as well as mild mitral regurgitation. (Tr. 144).

On May 19, 2003, Claimant returned to Dr. Kheptal, complaining of headaches, ringing in the ears, and a rash. (Tr. 175-176). Dr. Kheptal diagnosed Claimant with controlled hypertension, mild stress, anxiety, tobacco use, and allergies. (Tr. 176).

On June 18, 2003, Claimant saw Dr. T. Steve Ivan complaining of back pain stemming from moving a lawnmower. Dr. Ivan diagnosed Claimant with lower back strain.

On January 30, 2004, Claimant again saw Dr. Ivan for back pain. He was diagnosed with hypertension and chronic back pain. (Tr. 195-196).

On February 13, 2004, Claimant reported back pain and high blood pressure to Dr. Ivan. (Tr. 193-194). On June 23, 2004, Claimant reported a problem with a medication, which was changed. Dr. Ivan diagnosed Claimant with lumbar disc disease and hypertension and recommended an MRI, which Claimant refused for monetary reasons. (Tr. 191-192).

On July 9, 2004, Claimant was evaluated by Dr. Terry L. Kilgore on referral, complaining of back pain, arthritis, tendinitis, and hypertension. Dr. Kilgore diagnosed Claimant with chronic back pain, sciatica, tendinitis of the right elbow and shoulder, alcohol abuse by history, drug abuse by history, hepatitis by history, hypertension, and atypical chest pain. (Tr. 178-180). In range of motion testing, claimant was found to have

7

flexion of 30 out of 90, extension of 5 out of 25, left bending of 5 out of 25, and right bending of 5 out of 25 in the lumbosacral region.  In the cervical spine region, Claimant was found to have flexion of 40 out of 50, extension of 10 out of 60, left rotation of 40 out of 80, and right rotation of 40 out of 80.  (Tr. 181).

On July 13, 2004, Claimant returned to Dr. Ivan where he reported an emergency room visit two weeks before due to back pain. (Tr. 189).  Dr. Ivan diagnosed hypertension, chronic back pain, and a localized rash on his foot.  (Tr. 189-190).

On September 8, 2004, Claimant reported to Dr. Ivan that he was experiencing back pain the radiated down his left leg into his foot and foot numbness.  Dr. Ivan noted "ropiness" in the tissues at T8-L4, increased compression in the lumbar spine, greater on the left, and tenderness at the left L4 level.  (Tr. 187-188).  Dr. Ivan diagnosed Claimant with lumbar somatic dysfunction and hypertension.  (Tr. 188).

On December 8, 2004, Claimant sought medication refills from Dr. Ivan, stating he was unable to work with continuing back pain. Again, Dr. Ivan maintained his diagnoses of hypertension and chronic back pain.  (Tr. 185-186).

Claimant bears the burden of demonstrating a prima facie case of disability at steps one through four of the sequential evaluation.  Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir.

8

2003)(citation omitted). This burden extends to step three where a claimant must prove he meets or equals all of the specified medical criteria associated with a particular listing. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). In this instance, Claimant is contending the ALJ failed to properly evaluate the evidence in determining whether Claimant meets the criteria for Listing 1.04A concerning back impairment. This Listing provides

> Disorders of the spine (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, Sect. 1.04A.

In his decision, the ALJ found Claimant's condition "does not meet the requirements of Listing 1.04 because he does not have evidence of nerve root compression, or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (Tr. 21). Claimant contends the ALJ ignored the evidence of Dr. Sundaram's September, 1994 conclusion (erroneously referred to in Claimant's briefing as the "September 2004 conclusion") the Claimant suffered from probable lumbar radiculopathy likely due to either lateral

foraminal stenosis or a herniated disc. (Tr. 213). As Claimant points out, this condition involves disease of the nerve root. *Dorland's Illustrated Medical Dictionary*, 1562 (30th Ed. 2003). While this evidence is well outside of the alleged onset date, the ALJ should have discussed its effect on Claimant's qualification for a listing, given the later diagnoses of lumbar disc disease with leg numbness and sciatica by Drs. Ivan and Kilgore in 2004. The 1994 evidence cannot be said to be irrelevant since it bears directly on the necessary showing for a listing and Claimant continues to suffer from problems from the same region after the alleged onset date. On remand, the ALJ shall consider this evidence and order additional testing if he finds Dr. Sundaram's findings to be inconclusive.

### The ALJ's Credibility Determination

Claimant also contends the ALJ engaged in a flawed credibility evaluation. Specifically, Claimant alleges the ALJ improperly discounted Claimant's testimony as to the intensity, duration and limiting effects of the symptoms he alleged because Claimant did not have all of the prescriptions for medications filled, including medication for pain. (Tr. 22). The ALJ also found "claimant has had problems with drug and alcohol abuse in the past and this continues to be suspected as part of the cause of claimant's problems." Id. The ALJ also determined that Claimant's search for

work indicates he is not totally disabled.  He found Claimant was laid off rather than quit his last employment, finding "Social Security disability is not a substitute for unemployment."  Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

Many of the ALJ's comments represent unsupported supposition or subjective opinions not founded in the medical record. If Claimant's drug and alcohol abuse is found to be a condition which, if ceased, would render him not disabled, then the ALJ should have engaged in the proper analysis for such a finding. 20 C.F.R. §§ 404.1535 and 416.935; Salazar v. Barnhart, 468 F.3d 615, 622-624 (10th Cir. 2006). If he found the failure to take medication prescribed for Claimant as a cause for his inability to work, Defendant must show and the ALJ must find that the medication would restore Claimant's ability to work and that Claimant lacked the justifiable excuse for failing to comply with the treatment. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). The ALJ did not engage in this required analysis prior to finding the failure to take the medication adversely impacted upon the credibility of Claimant's testimony. The ALJ shall re-evaluate Claimant's credibility on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 24th day of March, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE